UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DAVID YOUNG,
SUSAN YOUNG, and
JEWELENE YOUNG,

      Plaintiffs,

v.                        Civil Action No. 2:07-479

APPALACHIAN POWER CO.,
a Corporation doing
business in West Virginia,

      Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>


      Pending are (1) the motion of the defendant for partial summary judgment, filed April 3, 2008; (2) the motion of the plaintiffs for partial summary judgment, filed June 5, 2008; (3) the motion of the plaintiffs to amend their complaint by adding a damages claim of disgorgement, filed March 17, 2008; (4) the objection and motion of the plaintiffs, filed May 15, 2008, to vacate the magistrate judge's order finding royalties to be unrecoverable and denying plaintiffs' motion to compel; and (5) the motion of the plaintiffs to extend time to complete discovery and conduct mediation, filed May 19, 2008.

I.

This action pertains to the defendant's continuing maintenance of power lines on plaintiffs' approximately 75-acre parcel located in Mingo County, West Virginia, pursuant to a right-of-way agreement dated July 30, 1992.

Plaintiff Jewelene Young and her then husband, Bill Young, acquired title to the parcel at issue from Earl and Eva Chaffin by a deed recorded on January 21, 1985. (01-21-85 Deed, Memo. in Supp. Pls'. Mot. Summ. J., ex. B). On February 11, 1985, Bill Young and Jewelene Young transferred their title to the property to a corporation entitled Young's Machine and Electric Shop, Inc. ("Young's Machine"). (02-11-85 Deed, Def's. Mot. Summ. J., ex. B). As its sole shareholder, the corporation was wholly owned by Bill Young. (04-30-03 Equit. Distrib. Decree ¶ 15, Memo. in Supp. Pls'. Mot. Summ. J., ex. D).

Bill and Jewelene Young were later divorced on November 29, 2001, with entry of the final decree of equitable distribution occurring on April 30, 2003. (Id.). Young's Machine was dissolved by Bill Young prior to the divorce. (Id.; W.V. Sec. of State Printout, Def's Resp. to Pls' Mot. Summ. J.,

2

ex. C).  As a result, Bill Young owned the property at issue in

his personal capacity.  (04-30-03 Equit. Distrib. Decree ¶ 15,

Memo. in Supp. Pls'. Mot. Summ. J., ex. D).  The equitable

distribution decree provided that Bill Young would retain

ownership of the assets formerly held by the corporation.  (Id.)

Jewelene Young was to receive one-half of the net proceeds of all

real estate owned by the corporation.  (Id.).  On January 13,

2004, plaintiff Jewelene Young purchased the approximately 75-

acre parcel from Bill Young individually and Bill Young as former

president of Young's Machine, becoming the land's sole owner.

(01-13-04 Deed, Def's Mot. Summ. J., ex. A).

        On January 27, 2004, Jewelene Young sold a partial

interest in the property to her son and daughter-in-law, David

Young and Susan Young, who are co-plaintiffs in this action.

(01-27-04 Deed, Def's Mot. Summ. J., ex. A; J. Young Depo. at 59-

60, Pls' Memo. in Supp. Mot. Summ. J., ex. G).

        By written agreement dated July 30, 1992, defendant

acquired the right of way in issue over the plaintiffs' land from

Young's Machine and Electric Shop, Inc.  Just prior to

defendant's acquisition of the right of way, Appalachian Power's

Division Superintendent, H.E. Ruloff, Jr., addressed a letter to

Bill Young as president of Young's Machine and Electric Shop,

Inc., dated July 23, 1992.  The letter refers specifically to the
right-of-way agreement of July 30, 1992 and states "this is a
temporary right of way and . . . will be removed from your
property by May 31, 1995."  (07-23-92 App. Ltr. to Bill Young,
Def's Mot. Summ. J., ex. D).  That the right of way would be
temporary was important to Bill Young, and he requested that its
temporary nature be put in writing.  (Weeks Depo. at 8-9, 12,
Pls' Memo. in Supp. Mot. Summ. J., ex. J).  The letter, which
unlike the right-of-way agreement is not of record in the Mingo
County Clerk's Office, further provides that, "you will be
contacted before the construction or use of any roads on your
property, and the use or construction of any roads will be agreed
upon by you and Appalachian."  (07-23-92 App. Ltr. to Bill Young,
Def's Mot. Summ. J., ex. D).

        On July 30, 1992, Bill Young, as president of Young's
Machine, signed the letter from Mr. Ruloff, agreeing to and
accepting the terms set forth therein.  (07-23-92 App. Ltr. to
Bill Young, Def's Mot. Summ. J., ex. D; Weeks Depo. at 9, Pls'
Memo. in Supp. Mot Summ. J., ex. J).  On the same date of July
30, 1992, Bill Young completed execution of the right-of-way
agreement bearing that date by acknowledging his signature before
a notary public as president of Young's Machine.  The right-of-

                            **4**

way agreement did not, however, mention the end date of May 31, 1995, as referenced in the letter.

The court pauses to note at this juncture that, for purposes of resolving the dispute in this case, the right-of-way agreement and the letter are integral parts of a whole. It is of no moment that one was recorded in the county clerk's office and the other was not.

Appalachian Power holds other easements that run across plaintiffs' property and overlap the easement granted July 30, 1992. There is a permanent easement dated March 23, 1987, that covers certain electrical facilities located on the property. (03-23-87 Easement, Def's Resp. to Pls' Mot. Summ. J., ex. D). Another permanent easement was executed on December 14, 2004 for other lines and poles crossing plaintiffs' property. (12-14-04 Easement, Def's Resp. to Pls' Mot. Summ. J., ex. D). Defendant contends, and plaintiffs do not dispute, that the portion of plaintiffs' land subject only to the 1992 easement, and not the 1987 and 2004 easements as well, is limited to 586 feet in length and 100 feet in width. (Def's Resp. to Pls' Mot. Summ. J. at 8-9; Pls' Reply to Def's Resp. to Pls' Mot. Summ. J. at 8-10).

On July 6, 2007, plaintiffs filed suit in the Circuit

5

Court of Mingo County alleging defendant's failure to remove its power lines from plaintiffs' property following the claimed expiration of the right-of-way agreement on May 31, 1995. (Compl. ¶¶ 4,5).  Plaintiffs claim that defendant's actions constitute a continuing trespass and a taking and that the defendant has caused a diminution in value of the property, an inability to use and enjoy the property, emotional distress and damage to the property.  (Id. at ¶¶ 6-12).  Plaintiffs' prayer for relief seeks damages, both compensatory and punitive, as well as royalties for the continued use of plaintiff's property. (Prayer ¶¶ 1-8).  Plaintiffs have moved to amend their complaint to add a request for damages in the form of disgorgement.  (Mot. to Amend to Add Damages ¶¶ 3-6).

On August 3, 2007 defendant removed the case.  Stating that it was a Virginia corporation with its principal place of business in Virginia, and that plaintiffs were residents of West Virginia, Appalachian Power invoked the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Not. of Remov. ¶¶ 8-10).  Plaintiffs have not contested jurisdiction.

6

II.

Plaintiffs' twofold motion for partial summary judgment requests that judgment be entered declaring that defendant is a continuing trespasser on plaintiffs' property and, as a result, plaintiffs are entitled to disgorgement.  (Pls' Mot. Summ. J. at 1).

Defendant's motion for partial summary judgment seeks to preclude damages based on its theories that (1) the statute of limitations has expired for the property damage claims, (2) the plaintiffs may not recover damages for the time period in which they did not own the property, and (3) royalties are unavailable. (Def's Memo. in Supp. of Mot. Summ. J.).

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

7

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); Id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

III.

A. Trespass

Plaintiffs' motion for partial summary judgment seeks a declaration that defendants have trespassed, and continue to trespass, on their land.  (Pls.' Memo. in Supp. of Mot. Summ. J. at 11).  Plaintiffs assert that they are valid title holders of the subject property; that given the letter executed contemporaneously with the right-of-way agreement, defendant's easement ended on May 31, 1995; and that defendant continues to have and use its lines and poles on the property.  (<u>Id.</u> at 11).

Defendant argues that the letter between Appalachian Power and Young's Machine was not recordable and therefore its terms "do not run with the subject land and do not inure to the benefit of future landowners.". (Def's Resp. to Mot. Summ. J. at 4). Defendant further contends that as plaintiffs were not signatories to the letter, it is unenforceable by them. (Id. at 5). Defendant argues that the only entity that could seek to enforce the letter was Young's Machine. (Id.). At no point does defendant argue that the letter is wholly unenforceable, nor that the intent of the parties in entering into the agreement contained therein was other than to limit the duration of the easement. Defendant's argument is that the particular plaintiffs in this suit cannot look to the letter in order to determine the duration of the easement.

Defendant seems to misconstrue plaintiffs' claim. Plaintiffs do not allege a breach of contract. Rather, plaintiffs' claim is for the tort of trespass. (Compl. ¶ 6). In West Virginia, "[t]respass is defined . . . as an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property." Hark v. Mountain Fork Lumber Co., 34 S.E.2d 348, 352 (W. Va. 1945). See also RESTATEMENT (SECOND) OF TORTS § 158 (1965)("One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the

10

other, if he intentionally . . . (c) fails to remove from the
land a thing which he is under a duty to remove.").

 The West Virginia recording act provides,

 <u>Contracts, deeds and mortgages invalid as to creditors
and purchasers until recorded.</u>

 Every such contract, every deed conveying any such
estate or term, and every deed of gift, or trust deed
or mortgage, conveying real estate shall be void, as to
creditors, and subsequent purchasers for valuable
consideration, without notice, until and except from
the time that it is duly admitted to record in the
county wherein the property embraced in such contract,
deed, trust or mortgage may be.

W. Va. Code § 40-1-9 (2008).  The purpose of the recording act "is
to protect a <u>bona fide</u> purchaser of land against creditors of the
grantor, and against other persons to whom the grantor might have
undertaken to execute title papers pertaining to the land
embraced in the recorded instrument."  <u>City of Bluefield v.
Taylor</u>, 365 S.E.2d 51, 55 (W. Va. 1987) (citing (<u>Bank of
Marlinton v. McLaughlin</u>, 121 1 S.E.2d 251, 253 (W. Va. 1939)).

  Plaintiffs, as purchasers of the land, do not seek the
protection of the recording act.  Young's Machine, as plaintiffs'
predecessor in title granted an easement to the defendant.  By
defendant's own admission, that easement was limited in duration
as evidenced by the letter dated July 23, 1992 and signed by Bill

Young, as president of Young's Machine, on July 30, 1992.[1]

Plaintiffs, as subsequent purchasers, do not seek protection of §

40-1-9 in an attempt to void a prior conveyance.  Plaintiffs seek

---

[1] Defendant does not argue that the letter is unenforceable. Nor does the defendant argue that it did not agree that the duration of the easement would be limited.  Defendant's argument is the letter's benefit does not run with the land because it was not recorded, and that plaintiffs cannot seek to enforce the letter because they never had an ownership interest in Young's Machine.  (Def.'s Resp. to Pls.' Mot. Summ. J. at 3-7)  In his deposition, defendant's Lead Right-of-way Agent, Bill Weeks, stated:

> When I was working with Frank he asked me to secure a Right-of-Way Agreement from Mr. Young, Young's Machine & Electric Shop.  I was told that it was going to be a temporary unit and that is what I conveyed to Mr. Young.  He wanted that in writing. . . . So, we agreed to that and put that in this letter.

(Weeks Depo. at 8-9, Pls.' Memo. in Supp. Mot. Summ. J., , ex. J).  The deposition of Harry Ruloff, defendant's former agent and division superintendent, who signed the letter, reads,

> Q.  But was it your understanding that the transmission line that was being moved on to Mr. Young's property by what was written in this letter, that it was only going to be temporarily placed on his property?
> A.  Yes.  It would be relocated, yes.

(Ruloff Depo. at 11-12, Pls.' Memo. in Supp. Mot. Summ. J., ex. I).  Mr. Ruloff also stated,

> Q.  Now I'm going to ask you to look at what I have asked the Court reporter to mark as Exhibit B.  That is the Letter to Bill Young from you, I'm assuming that it is from you.  Is that your signature at the bottom?
> A.  That's my signature but it is not my Letter.
> Q.  Okay, did you cause it to be prepared?
> A.  Bill Weeks prepared it.
> Q.  Were you in agreement with it by signing off on it?
> A.  Yes.  I wouldn't have signed it otherwise.

(Id. at 10.)

to recover for trespass, based on the expiration of defendant's easement.  The recording act provides a shield to bona fide purchasers against the burden of prior unrecorded conveyances, not a sword to earlier grantees to be used in an attempt to alter the term of the interest they have been granted.  Plaintiffs merely seek to show the terms of the easement granted by Young's Machine to the defendant.  The recording act does not govern whether the benefit of the letter evidencing the duration of the easement inures to the plaintiffs.  Whether the letter limiting the duration of the easement was recorded, or recordable, is simply irrelevant.

Nor can the defendant avail itself of the protection of the recording act.  The defendant, having had full notice of the agreement, is not in the position of a bona fide purchaser. Farrar v. Young, 230 S.E.2d 261, 264-65 (W. Va. 1976).  The letter limiting the duration of the easement was signed by the defendant's agent, Mr. Ruloff, on July 23, 1992 and by Mr. Young, as president of Young's Machine on July 30, 1992, the same day the easement was executed.[2]  As such, defendant was, without a

---

[2] It is not disputed that the letter was drafted on July 23, 1992 and executed by Mr. Young on July 30, 1992, the date the right-of-way was granted.  Bill Week's deposition reads,
> Q.  Now would you agree with me that the letter,
> Exhibit B, was drafted July 23, 1992 and Mr. Young

13

doubt, on notice of the agreement when the right-of-way was
executed.  Therefore, defendant can not be a bona fide purchaser
without notice entitled to the act's protection.

The defendant's argument that "[s]ince none of the
Plaintiffs in this lawsuit were signatories to . . . [the]
letter, the Plaintiffs cannot use . . . [the] letter as a basis
for recovery of damages in this case," (Def.'s Resp. to Pls.'
Mot. Summ. J. at 5) similarly misses the mark.  As noted above,
plaintiffs' claim is for trespass, not breach of contract.  If
the right-of-way granted by Young's Machine to the defendant
expired May 31, 1995, defendant is a trespasser and as such
plaintiffs are entitled to recover.  The question is not whether
plaintiffs can enforce the letter, but the duration of the
easement.

In <u>Holleran v. Cole</u>, 488 S.E.2d 49 (W. Va. 1997) a 79-

---

signed it on July 30, 1992?
     A.   Yes.
(Weeks Depo. at 9, Pls.' Memo. in Supp. Mot. Summ. J., ex. J).
Harry Ruloff's deposition reads,
     Q.   And would you agree with me that it [the letter]
     was executed at the same time as the other Right-of-Way
     Agreement?
     A.   It had to be about the same time because I'm sure
     Mr. Young would not have signed that other agreement
     without this letter.
(Ruloff Depo. at 11-12, Pls.' Memo. in Supp. Mot. Summ. J., ex.
I).

**14**

year-old woman conveyed property, for value, via general warranty
deed.  Contemporaneously with the deed, the woman and the
purchasers entered into a written agreement whereby the woman
"could continue to reside in the six-room apartment for the
remainder of her life or until she should vacate the apartment."
Id. at 51.  Later, the initial purchasers re-conveyed the
property, again by warranty deed.  The deed made no mention of
the written agreement.  This second group of purchasers then
conveyed the property to the appellant (plaintiff below).  This
final conveyance was also by general warranty deed with no
mention of the written agreement or any interest retained by the
woman.  The court noted,

> [i]mportantly, however, the record is undisputed that,
> at the time of his purchase of the property, the
> appellant had actual knowledge of both the agreement
> between the appellee [woman] and the St. Clairs
> [initial purchasers] and the appellee's occupancy of
> the apartment.

Id.  The written agreement was not recorded until sometime after
appellant acquired title to the property.  Appellant sued to
evict the woman, or in the alternative, to recover rent.  The
appellant argued below that "the agreement was a matter between
the appellee and the St. Clairs only and not binding on him."
Id.  The lower court concluded, as a matter of law, that
appellant took the property with knowledge of the woman's rights

and that he was bound by the agreement.  On appeal, the Supreme Court of Appeals of West Virginia began its analysis by noting, "[g]enerally, the execution of a deed, unambiguous in its terms, is not subject to contradiction by collateral agreements or contracts between the parties."  Id. at 52.  The court held, however, that "appellant was not an innocent purchaser of the property in question and, instead, acquired the property subject to the separate written agreement executed by the appellee and the St. Clairs."  Id. at 53.

Here, the defendant was not only aware of the agreement contained in the letter between Young's Machine and Mr. Ruloff, but was a party to it.  The defendant does not dispute that the letter recites the agreement of the parties.  The right-of-way agreement is unlimited on its face, like the general warranty deed in Holleran.  Also like Holleran, as a signatory to the agreement encapsulated in the letter, the defendant was on notice of the true nature of the easement.  As appellant's interest in the property at issue in Holleran was limited by the written agreement allowing the woman to remain on the property, the defendant's interest is likewise limited by the terms of the letter dated July 23, 1992, and executed by Young's Machine on July 30 of the same year.  It is irrelevant whether plaintiffs

16

were signatories to, or can enforce, the letter.  The question is
the extent of the interest conveyed by Young's Machine to the
defendant.  Young's Machine, through Bill Young, agreed to
convey, and the defendant purchased, an easement expiring May 31,
1995.  As noted, defendant does not dispute this fact.  Thus,
regardless of whether plaintiffs held an interest in Young's
Machine, or were signatories to the letter, the easement,
according to its terms, expired on May 31, 1995, and the
defendant has been a trespasser ever since.


B.  Allegations of Damages Before Plaintiffs Owned Property


        Defendant argues plaintiffs cannot recover for damages
occurring prior to their acquiring an ownership interest in the
property in January 2004.  (Def.'s Memo. in Supp. of Mot. Summ.
J. at 7).  Two of the plaintiffs, David Young and Susan Young,
concede the point.  (Pls.' Resp. to Mot. Summ. J. at 4).  They
acquired their interest on January 27, 2004.  (1-27-04 Deed,
Def.'s Mot. Summ. J., ex. A).

        Co-plaintiff, Jewelene Young, claims to have had an
ownership interest in the property since the right-of-way
agreement and letter were executed in 1992.  (Id.).  Defendant

replies that, based upon the deeds of record, Jewelene Young did

not take ownership of the property until January 13, 2004.

(Def.'s Reply to Resp. to Mot. Summ. J. at 6).  The 1992 letter

was addressed to Bill Young as president of Young's Machine, not

Jewelene Young.  (07-23-92 App. Ltr. to Bill Young, Def.'s Mot.

Summ. J., ex. D).  Other evidence indicates that Bill Young,

rather than Jewelene Young, was the party involved in negotiating

the right-of-way agreement on behalf of Young's Machine and

Electric Shop, Inc., a business owned by Bill Young.  (Weeks

Depo. at 8-9, Pls.' Mot. Summ. J., ex. I; 04-30-03 Divorce Order

¶ 15, Pls.' Mot. Summ. J., ex. D).

Jewelene Young argues she always had a one-half

equitable interest in the property owned by Young's Machine, as

was recognized by the Family Court of Mingo County, particularly

inasmuch as she initially jointly owned it with her husband Bill

Young, prior to granting it to the corporation.  (Pls.' Reply to

Resp. to Mot. Summ. J. at 2).  The fact that the family court

recognized during the divorce proceedings her equitable right to

marital property does not, however, mean that Jewelene Young was

a co-owner of all of her husband's property during the marriage.

As a consequence, Jewelene Young's recovery of damages

is limited to the time after she gained an interest in the

18

property, which was from January 13, 2004 to the present.
Jewelene Young also had an interest in the property from January
21, 1985 to February 11, 1985, long before the right-of-way of
July 1992 was granted.  The defendant is not, however, alleged to
have been a trespasser on the parcel at that time.  Accordingly,
the portion of defendant's motion for summary judgment seeking to
limit plaintiffs recovery to the period during which plaintiffs
held an interest in the property is granted.


C. Extent of Trespass


        Defendant has other easements running across
plaintiffs' property which overlap the right-of-way granted July
30, 1992.  Young's Machine granted the defendant a permanent
easement on March 23, 1987.  (3-23-87 Easement, Def.'s Resp. to
Pls.' Mot. Summ. J., ex. D).  There is also an easement granted
by plaintiffs to the defendant on December 14, 2004. (12-14-04
Easement, Def.'s Resp. to Pls.' Mot. Summ. J., ex. D).
Defendants contend that given the overlap between these easements
and the easement of July 30, 1992, the scope of any trespass is
limited to 586 feet.  (Def.'s Resp. to Pls.'s Mot. Summ. J. at
9).  Plaintiffs' only reply is "a trespass is a trespass no
matter how slight."  (Pls.' Reply to Def.'s Resp. to Pls.' Mot.

19

Summ. J. at 9).  As noted above, plaintiff Jewelene Young
acquired her interest on January 13, 2004.  Plaintiffs David and
Susan Young acquired theirs on January 27, 2004.  As the
plaintiffs concede that the defendant possessed a valid easement
for the land covered by the March 23, 1987 easement, none of them
are entitled to recover for trespass to the land covered thereby.
For the period of January 13, 2004 through the time the last
easement was granted on December 14, 2004, defendant trespassed
on plaintiff Jewelene Young's land to the extent its power lines
were not within the scope of the March 23, 1987 easement.  The
defendant trespassed on David and Susan Young's interest in the
property, to the same extent, from January 27, 2004, through
December 14, 2004.  Following plaintiffs' grant of the December
14, 2004 easement to the defendant, it was, and continues to be,
a trespasser on 586 feet of the plaintiffs' land.  Accordingly,
the portion of plaintiffs' motion for summary judgment seeking a
declaration that defendant trespassed, and continues to trespass,
on plaintiffs' land in Mingo County, West Virginia is granted to
the extent described above.


D. Disgorgement


          Plaintiffs assert that because defendant has benefitted

20

from its illegal trespass over plaintiffs' property since the expiration of the right of way on May 31, 1995, the equitable remedy of disgorgement should be invoked.  (Pls.' Memo. in Supp. of Mot. Summ. J. at 12-13).

Defendant responds that plaintiffs (1) have not put forward any cases supporting their disgorgement theory; (2) have not been granted leave to amend their complaint to add a claim for disgorgement; and (3) are making a claim for disgorgement damages for a 13-year period, which is well beyond the time that has elapsed since they acquired title to the property in January 2004.  (Def.'s Resp. to Pls.' Mot. Summ. J. at 12-13).

Where a lessee remains on leased premises after the termination of a lease without the lessor's consent, thus becoming a trespasser, the Supreme Court of Appeals of West Virginia has held that,

> [t]he measure of damages for trespass to realty is the rental value of the property wrongfully occupied and withheld, with compensation for injury to the residue thereof. . . . It is axiomatic, in the absence of statutes providing multiple damages for a tenant's willful failure to surrender leased premises, that a lessor is entitled to the reasonable rental value of the property wrongfully withheld by a lessee.

Bethlehem Steel Corp. v. Shonk Land Co., 288 S.E.2d 139, 149 (W. Va. 1982) (internal citation and quotation marks omitted).  Under

the heading "Dispossession of and Trespass to Land," the
Restatement of Restitution provides, "[a] person who has
trespassed upon the land of another is not thereby under a duty
of restitution to the other for the value of its use . . . ."
RESTATEMENT (FIRST) OF RESTITUTION § 129 (1937).  The following
illustrations provided by the Restatement are particularly
helpful,

> 1. A disseises B of Blackacre and opens a store
> thereon, making thereby a profit of $10,000.  The
> reasonable rental value of the land is $1,000 for the
> period occupied by A.  In addition to regaining the
> land, B is entitled only to $1,000 in an action of
> tort.  B is not entitled to maintain an action of
> assumpsit.
>
> 2. A uses a road across B's land without B's knowledge
> for a period of two years in the transportation of
> materials, doing so without harm to the land.  A saves
> $2000 thereby.  A reasonable charge for the use of the
> road would be $200 per year.  B is not entitled to
> recover for the use of the land in an action of
> assumpsit; in an action of tort he is entitled to
> recover only $200.

Id. § 129 cmt. a, illus. 1,2.[3]  Plaintiffs have adduced no

---

[3] The American Law Institute has released a tentative draft
of the Restatement Third of Restitution and Unjust Enrichment,
which under the heading "Trespass And Conversion," provides as
follows:
> (1) A person who obtains a benefit by an act of
> trespass or conversion, or in consequence of such an
> act by another, is accountable to the victim of the
> wrong for the benefit so obtained.
> (2) The measure of recovery depends on the
> blameworthiness of the defendant's conduct.  As a
> general rule:

evidence that defendant acted in conscious derogation of

plaintiffs' property rights.  Disgorgement is an equitable

---

> (a) A conscious wrongdoer, or one who acts despite a
> known risk that the conduct in question violates the
> rights of the claimant, will be required to disgorge
> all gains (including consequential gains) derived from
> the wrongful transaction.
> (b) A person whose conduct is innocent or merely
> negligent will be liable only for the direct benefit
> derived from the wrongful transaction.  Direct benefit
> may be measured, where such a measurement is available
> and appropriate, by reasonable rental value or by the
> reasonable cost of a license.

(RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 40 (Tentative
Draft No. 4, 2008).  Plaintiffs have adduced no evidence that the
defendant was a "conscious wrongdoer."  The court finds the
following illustration to be instructive:

> A owns Blackacre; B owns Whiteacre, an adjoining tract.
> Whiteacre is burdened by an easement, benefitting
> Blackacre, permitting A to transport coal removed from
> Blackacre by tramway crossing Whiteacre.  A uses the
> tramway to transport coal from Greenacre as well as
> Blackacre.  B discovers the facts and obtains an
> injunction against further surcharge of the Whiteacre
> easement.  A has moved one million tons of coal from
> Greenacre in violation of B's property rights.  The
> measurable injury to B (or to Whiteacre) as a result of
> A's trespass is nil, and tort damages by the law of the
> jurisdiction would be nominal only.  A license to
> transport additional coal over an existing easement
> would normally be available by agreement at a price of
> one cent per ton.  The benefit obtained by A though
> interference with B's property rights will be
> determined by the court in an amount not less than
> $10,000.

(Id. § 40 cmt. b, illus. 2).  Thus, even under the more liberal
and flexible standard of damages provided by the tentative draft,
the plaintiffs are entitled only to the value of an easement over
the land for the period of the trespass.  In any event, Bethlehem
Steel defines the measure of damages for trespass as the
reasonable rental value of the land trespassed upon, and by this
definition the court is bound.

remedy.   See Petrelli Coal Co. v. Petrelli, 127 S.E. 915, 916 (W. Va. 1925) (holding, "a court of equity has jurisdiction to compel restitution."); see also  SEC v. Marker, 427 F. Supp. 2d 583, 591 (M.D. N.C. 2006) ("Disgorgement is an equitable remedy.").   In view of the multiple easements held by defendant upon plaintiffs' property, and plaintiffs' lengthy delay in exercising their right of redress in this action, equity simply does not call for the plaintiffs' to be afforded the remedy of disgorgement.

        Plaintiffs acknowledge that the securities, trademark, patent, licensing, and civil forfeiture cases they cited in support of their claim for disgorgement are "not controlling." (Pls.' Memo. in Supp. of Mot. Summ. J. at 13-17).   Rather, they are cited for the general proposition that a court can require disgorgement of ill-gotten gains.  (Id. at 13).   While the court may have the power to award disgorgement in certain contexts, given Bethlehem Steel, it finds no authority to do so here. Accordingly, the portion of plaintiffs motion for summary judgment seeking the remedy of disgorgement is denied. Plaintiffs' motion to amend their complaint by adding a damages claim of disgorgement is similarly denied.

E. Royalties

        In an order regarding a discovery dispute, the
magistrate judge found that royalties are not recoverable in this
case because nothing was extracted from the property and there
was not a mineral lease on the property.  (05-15-08 Order at 2-
3).

        Both sides cite the <u>Black's Law Dictionary</u> definition
of "royalty" in support of their argument.  (Pls.' Obj. & Mot. to
Recon. ¶ 5; Def.'s Memo. in Supp. of Mot. Summ. J. at 7).
Plaintiffs use the sixth edition, which defines "royalties" as
"[c]ompensation for the use of property, usually copyrighted
material or natural resources, expressed as a percentage of
receipts from using the property or as an account per unit
produced."  The defendant, however, looks to the seventh edition
which defines "royalty" as:

        1. A payment made to an author or inventor for each
        copy of a work or article sold under a copyright or
        patent.

        * * *

        2. A share of the product or profit from real property,
        reserved by the grantor of a mineral lease, in exchange
        for the lessee's right to mine or drill on the land.

<u>Black's Law Dictionary</u> at 1330 (Deluxe 7th ed. 1999).

25

In the context of ruling on whether the defendant should be ordered to provide information relating to its profits from the transmission of electricity across plaintiffs' property, the magistrate judge found that income of that sort is not discoverable because nothing was extracted from the land and there was not a mineral lease.  (05-15-08 Order at 2).  The magistrate judge concluded royalties are not recoverable in this case.  (Id. at 3).  The magistrate judge explained that the cases cited by the defendant, Wellman v. Energy Resources, Inc., 557 S.E.2d 254 (2001) and Bethelem Steel Corp. v. Shonk Land Co., 288 S.E.2d 139 (1982), demonstrated her point.  In situations where royalties are recoverable, it is as a corollary of the rule that the measure of damages for trespass is the rental value of the property trespassed upon.  As noted by Bethlehem Steel, "for mineral leases reasonable rental value is synonymous with reasonable royalties."  288 S.E.2d at 149.  Indeed, if a trespass involves removing something from the land, the trespasser should be required to place the landowner in the position he would have been in had no trespass occurred; namely, the landowner should be reimbursed for whatever has been wrongfully taken from the land.  Here, nothing was taken from plaintiffs' land.  Plaintiffs were, and continue to be, deprived only of the rental value of the land

trespassed upon by the defendant.  The value of which they have been deprived is all to which they are entitled.  To afford plaintiffs royalties for the value of the power transmitted through the defendant's lines would be to grant them an undeserved windfall, as defendant's wrong did not deprive plaintiffs of that value in the first place.  Thus, the court agrees with the magistrate judge that there is no authority for awarding royalties in a trespass case such as this one. Accordingly, the portion of defendant's motion for summary judgment seeking to preclude plaintiffs from recovering royalties is granted.  Given the court's agreement with the same rationale adopted by the magistrate judge in denying the plaintiffs' motion to compel, plaintiffs' objection to the magistrate judge's ruling is denied.

F.  Statute of Limitations

        The statute of limitations governing property damage is two years.  W. Va. Code § 55-2-12(a).  With respect to the statute of limitations portion, defendant's motion seeks to bar three types of property damage.  Plaintiffs concede that two of them -- damage from the creation of the pathway and from the movement of rocks -- are barred by the statute of limitations.

27

(Pls.' Resp. to Mot. Summ. J. at 1-3).

While damage to the third type, plaintiffs' driveway, occurred in 2004, more than two-years prior to filing this action on July 6, 2007, the plaintiffs respond that the statute of limitations was tolled by misrepresentations made by "defendant's agent," Walter Gore.  (Pls.' Resp. to Mot. Summ. J. at 2).

West Virginia law governs whether the statute of limitations is tolled.  <u>Board of Regents of Univ. of State of N.Y. v. Tomanio</u>, 446 U.S. 478, 486-488 (1980).  Generally, the statute of limitations begins to run when the tort occurs; however, under the discovery rule the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim.  Syl. pt. 1, <u>Cart v. Marcum</u>, 423 S.E.2d 644 (1992).  After the defendant demonstrates that the complaint was not filed within the applicable statute of limitations, as here, plaintiffs have the burden of showing the application of the discovery rule.  <u>Worley v. Beckley Mechanical, Inc.</u>, 648 S.E.2d 620, 625 n.7 (2007) (citing syl. pt. 3, <u>Cart v. Marcum</u>, 423 S.E.2d 644 (1992)).  Two versions of the discovery rule have been developed in West Virginia.  <u>Merrill v. W. Va. Dep't of Health & Human Res.</u>, 632 S.E.2d 307, 312 (2006).

The "more lenient" version is stated in <u>Gaither v. City Hospital, Inc.</u>, 487 S.E.2d 901, 909 (1997). In <u>Gaither</u>, the Supreme Court of Appeals of West Virginia observed:

> In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

<u>Id.</u> at 909.  Plaintiffs have not made an argument on this version but have instead sought invocation of the other, more stringent, fraudulent concealment version of the discovery rule.

The fraudulent concealment version "'applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.'" <u>Davey v. Estate of Haggerty</u>, 456, 637 S.E.2d 350, 353 (2006) (<u>per curiam</u>) (quoting syl. pt. 3, <u>Cart</u>, 423 S.E.2d 644).

According to plaintiffs' response, they called Walter Gore, defendant's right-of-way agent, and reported the damage. (Pls.' Resp. to Mot. Summ. J. at 2).  Gore allegedly responded by asking plaintiffs to send him estimates of the necessary repairs

29

and that defendant's independent contractor, Pike Electric, would repair the damage.  (Id.).  At the time plaintiffs filed their response, they noted that the deposition of Gore had yet to be taken.  (Id. at 3).

Although in the briefing plaintiffs allege that Gore made certain misrepresentations, the plaintiffs have not set forth any evidence demonstrating that the defendants' alleged wrongdoing contributed to plaintiffs' failure to discover the driveway damage.  Indeed, the deposition testimony of the Youngs reveals that the damage was evident in 2004.  (D. Young Depo. at 114-118, Def.'s Mot. Summ. J., ex. E; S. Young Depo. at 51, Def.'s Mot. Summ. J., ex. F; J. Young Depo. at 48, Def.'s Mot. Summ. J., ex. H).  Furthermore, the affidavit of defendant's district line coordinator, Joseph Hubbard, reveals that the bulldozing and clearing work done for the installation of a new pole, which allegedly caused the damage, occurred between October 18, 2004 and December 19, 2004.  (Hubbard Aff't. ¶¶ 1-3, Def.'s Mot. Summ. J., ex G).

Plaintiffs' argument for tolling the statute is that they "relied upon the misrepresentations of Mr. Gore in delaying any action, attempting to give the Defendant an opportunity to cause the repairs to be made."  (Pls.' Resp. to Def.'s Mot. Summ.

30

J. at 2).  Assuming this to be true, as a matter of law, the
statute of limitations is not tolled.  Given plaintiffs'
assertion that they immediately "called Mr. Gore and reported the
damage to their driveway," (Id.; D. Young Depo. at 117-118,
Def.'s Mot. Summ. J., ex. E) it is clear that plaintiffs were
aware of "the essential elements of a possible cause of action,
that is . . . duty, breach, causation, and injury."  Davey, 637
S.E.2d at 354.[4]  Such awareness is all that is required for the
statute of limitations to begin to run.  Indeed, even if
plaintiffs "forwent any legal action to attempt to give the
Defendant the opportunity to correct the problem" in response to
Mr. Gore's assurances that the damage would be remedied, (Pls.'
Resp. to Def.'s Mot. Summ. J. at 2), the statute would not be
tolled.  See Davey, 637 S.E.2d 354 ("The crux of the 'discovery
rule' has always been to benefit those individuals who were

---

[4] As noted above, the damage to the roadway occurred between
October 18, 2004 and December 19, 2004.  Plaintiffs' suit was
filed July 6, 2007.  David Young's deposition reads,
> Q.  Okay.  When did you first start noticing the damage
> to the road?
> A.  Immediately.  Where they turned in and out here,
> you immediately noticed where the big wheels on the
> trucks, heavy trucks, would make this turn.  You would,
> you know, you seen that damage immediately.
> Q.  Okay.  And then at some point I assume you
> contacted Walker [Gore]--
> A.  Immediately.
(D. Young Depo. at 117-118, Def.'s Mot. Summ. J., ex. E).

either unaware of their injuries or prevented from discovering them.") (quoting McCoy v. Miller, 578 S.E.2d 355, 359 (W. Va. 2003); Cart, 423 S.E.2d 648 ("The 'discovery rule,' then is to be applied with great circumspection on a case-by-case basis only where there is a strong showing by the plaintiff that he was prevented from knowing of the claim at the time of the injury.").

The statute began to run when the plaintiffs became aware of the damage to the driveway.  Nothing of legal import prevented the plaintiffs from bringing suit at that point.  It is clear that plaintiffs were aware of the damage well before July 6, 2005.  If a defendant's assertions, or even misrepresentations, that property damage would be remedied sufficed to toll the statute of limitations, the toll would subsume the statute itself.  Accordingly, the portion of defendant's motion for summary judgment requesting summary judgment as to plaintiffs' claims for property damage is granted.

IV.

In their motion to extend the deadline for completion of mediation and discovery, plaintiffs represent that they have yet to depose defendant's experts and a witness who was

32

previously employed by the defendant, presumably Gore.  (Pls.'
Mot. to Extend Deadlines ¶ 9).  The court's scheduling order set
May 27, 2008 as the discovery deadline.  The last day to
conclude mediation was set as June 13, 2008.  Plaintiffs request
that both deadlines be extended.  The court has learned that
mediation was conducted on August 20, 2008, and was unsuccessful.

Plaintiffs represent that the parties have worked
together in an effort to complete discovery in a timely manner.
Defendant has agreed to allow plaintiffs to depose its two expert
witnesses, and its former employee, beyond the discovery
deadline.  (Def.'s Resp. to Pls.' Mot. to Extend Deadlines at 2).
Defendant, however, objects to a general extension of the
discovery deadline.

Given that the court grants defendant's motion for
summary judgment as to the property damage claims, deposing Gore
seems unnecessary.  Nevertheless, should plaintiffs need to
depose Gore for another reason, that opportunity should be
afforded.  In accordance with the parties' agreement, the
discovery deadline is extended until October 24, 2008 for the
limited purpose of affording plaintiffs the opportunity to depose
Gore, should his deposition be necessary, and to depose
defendant's expert witnesses.  In addition, the mediation

33

deadline is extended until October 28, 2008.


                                V.


        It is, accordingly, ORDERED as follows:


        1.   Plaintiffs' motion for partial summary judgment as
             to whether defendant's conduct constituted
             trespass be, and it hereby is, granted;


        2.   Plaintiffs motion for partial summary judgment
             seeking equitable relief in the form of
             disgorgement be, and it hereby is, denied;


        3.   Plaintiffs' motion to amend to add a claim of
             disgorgement be, and it hereby is, denied;


        4.   Plaintiffs' objection and motion to vacate the
             magistrate judge's order be, and it hereby is,
             denied;


        5.   Defendant's motion for partial summary judgment
             seeking findings that (1) the statute of

limitations has expired for the property damages claims, (2) the plaintiffs may not recover damages for the time period in which they did not own the property, and (3) royalties are unavailable, be, and it hereby is, granted.

6. Plaintiffs' motion to extend time to complete discovery and conduct mediation be, and it hereby is, granted to the extent described in section IV above. The discovery deadline is extended until October 24, 2008. Any mediation must be completed by October 28, 2008.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record.

DATED: October 10, 2008

John T. Copenhaver, Jr.
United States District Judge

35